IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CR3025 |
| | ) | |
| V. | ) | |
| | ) | FINDINGS AND |
| LOWELL BAISDEN, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

INTRODUCTION

This matter is before the court on the defendant's pretrial motions.  Defendant Lowell Baisden has moved:

- "[T]o dismiss the Indictment filed against him in the above captioned matter or, alternatively, to suppress evidence illegally obtained by the Government against him," (filing no. 38);

- For an order compelling the government to disclose information Baisden needs to pursue his motion to dismiss, (filing no. 53);

These motions raise constitutional challenges under the Fourth and Fifth Amendment and claims for additional disclosure under the court's supervisory power.

SUMMARY OF ISSUES

Baisden's motions raise the following Fourth and Fifth Amendment issues:

--   Were Baisden's Fourth and Fifth Amendment rights violated by the IRS' pursuit of discovery in its parallel civil action against Baisden?

-- Did the government delay obtaining a criminal indictment against Baisden, and if so, did the delay prejudice the defendant in violation of his Fifth Amendment rights?[1]  Filing No. 38, ¶ 17.

-- Is Baisden entitled to discovery to determine when the government decided to pursue criminal charges and the extent of its communications with the civil attorneys and investigators, the purpose being to determine if the facts support the Fourth and Fifth Amendment challenges identified above?

Citing the court's inherent supervisory power, Baisden requests the court compel the United States to disclose information Baisden believes is necessary for him to support his motion to dismiss at an evidentiary hearing.

## STATEMENT OF FACTS

Defendant Baisden was a Certified Public Accountant (CPA) whose clients included many doctors and other health professionals.  Filing No. 38, ¶1.  The grand jury's indictment alleges that for calendar years 2003 and 2004, Baisden did willfully attempt to evade and defeat all income tax due and owing by two of his clients, identified as W.W. and D.W. in the indictment.  Filing No. 1.  The indictment also alleges Baisden concealed and attempted to conceal the nature and extent of W.W. and D.W.'s income and assets by placing the income and property in nominee corporations, including Axhandle Corporation.  The indictment further alleges Baisden concealed and attempted to conceal W.W. and D.W's income by filing with the Internal Revenue Service a Form 1040 which falsely and materially misrepresented their income and by filing a Form 1120 which falsely and

---

[1] Baisden's brief argues his Sixth Amendment rights were violated by the government's pre-indictment delay.  Pre-indictment delay is a Fifth Amendment claim; post-indictment delay is a Sixth Amendment claim.  Baisden's claim of prejudicial pre-indictment delay will be evaluated under the Fifth Amendment.  U.S. v. Jackson, 446 F.3d 847, 849 (8th Cir. 2006).

2

materially misrepresented the income, expenses, and nature of the business activity for Axehandle Corporation.  Filing No. 1.

On August 2, 2004, IRS Examiner Thomas Cheung sent a letter to defendant Baisden which asked Baisden to attend a meeting on October 26, 2004, and produce at the meeting all documents for his accounting clients who bought or were asked to purchase a promotion designed to limit individual income taxation by deducting expenses and reporting income through a corporation. (Filing No. 39-6, Ex. 3A, IRS Information Document Request).  The letter advised Baisden:

> If we conclude that penalties, injunction, and/or "pre-filing notification" is appropriate, you will be afforded an opportunity to present any facts or legal arguments that you feel indicate that such action should not be taken.

(Filing No. 39-5, Ex. 3, August 2, 2004 IRS letter to Baisden).

On September 29, 2004, Robert McChesney, an accountant, forwarded information to the IRS regarding Baisden's tax filings for Oceana Blue Corporation and the individual tax returns for two of Baisden's former clients who were, apparently, now seeking accounting advice and services from Chesney. (Filing No. 39-7, Ex. 4, September 19, 2004 McChesney letter to IRS).

After reviewing documents regarding Baisden's accounting and tax return preparation methods, on September 30, 2004, the IRS notified Baisden it was initiating an investigation of Baisden's role in promoting an abusive tax avoidance transaction.  The letter stated the IRS was considering imposing penalties and injunctions against Baisden pursuant to the

authority granted under IRS Code sections 6694, 6695, 6701, 7402, 7407, and 7408. (Filing No. 39-8, Ex. 5, September 30, 2004 IRS letter to Baisden).

Baisden met with Agent Cheung on October 26, 2004 at Agent Cheung's office. Following the meeting, Baisden faxed additional documents the IRS had requested during the meeting; specifically, a joint venture agreement between a corporation and one his clients, and the model Baisden used and promoted for his clients. (Filing No. 39-9, Ex. 5A, October 28, 2004 Baisden letter to IRS).

On July 13, 2005, Baisden was verbally advised he was now the subject of an IRS criminal investigation. During the conversation, IRS Special Agent David Guest advised Baisden of his Fifth Amendment rights. This information was confirmed in writing on August 10, 2005. The letter stated:

> [Y]ou are the subject of an Internal Revenue Service criminal investigation relating to possible violations of 26 USC Section 7206(2) Aiding and Abetting in the preparation of false documents, 18 USC Section 371 Conspiracy to Defraud the United States, and potentially other criminal statutes. . . . Under the 5th Amendment to the Constitution of the U.S., I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. Anything which you say or any documents which you submit may be used against you in any criminal proceeding which may be undertaken.
>
> This also holds true for the civil investigation being conducted by Revenue Agent Thomas Cheung. In other words, you are not required to answer any questions or submit information or documents in regards to this matter, if such answers, information, or documents might tend to incriminate you in any way.

(Filing No. 39-10, Ex. 6, August 10, 2005 IRS letter to Baisden).

4

On September 29, 2006, the IRS pursued a civil action for injunctive relief against Baisden in the United States District Court for the Eastern District of California. United States Attorney McGregor W. Scott and U.S. Department of Justice tax litigation attorney Jacqueline C. Brown represented the IRS. (Filing No. 39-11, Ex. 7, IRS civil complaint). Attorney Indra Lahiri represented Baisden.

Lahiri spoke with Agent Guest on October 16, 2006 and November 6, 2006 to explain that Lahiri's clients, Baisden and some of his clients, had sent ten boxes of documents requested by Agent Guest. Regarding the parallel civil and criminal IRS investigations, and in response to Lahiri's questions, Agent Guest acknowledged he had talked to individuals involved in the civil injunction case, including IRS attorney Jacqueline Brown, once or twice before the civil complaint was filed, and explained the IRS communicates and shares information during parallel civil and criminal investigations, but he confirmed the civil case was separate from the criminal investigation, stated he had not talked to the government's civil counsel after the civil complaint was filed, and denied any further involvement in the civil case. Lahiri expressed concern over Baisden's inability to adequately defend the civil complaint without compromising his right against self-incrimination in the criminal investigation. (Filing Nos. 39-12, Ex. 8, October 16, 2006 Memorandum of Conversation; 39-13, Ex. 9, November 7, 2006 Memorandum of Conversation).

As part of the civil discovery process, the IRS served interrogatories and requests for production on Baisden in August of 2007, and served subpoenas on banking institutions to obtain Baisden's account statements, deposit slips, and deposited checks. (Filing Nos. 39-15, Ex. 11, Plaintiff's Requests for the Production of Documents; 39-16, Ex. 12, Plaintiff's interrogatories; 39-17, Ex. 13, IRS subpoenas).

Baisden's civil counsel withdrew on April 1, 2008, and thereafter Baisden appeared pro se.  United States v. Baisden, 1:06-cv-01368 (E.D. Cal), filing no. 163.  Acting pro se, Baisden provided interrogatory answers and produced voluminous documents in response to the IRS' written discovery.  Baisden did not assert his Fifth Amendment rights in response to any of the discovery requests.  (Filing No. 39-18, Ex. 14, Summary listing of documents; 39-19, Ex. 15, Email confirming service of discovery; 39-20, Ex. 16, Baisden's discovery responses).  Counsel for the IRS demanded additional information responsive to its written discovery, stating Baisden's responses were incomplete, his assertions of attorney-client privilege were invalid, and his interrogatory answers must be signed under oath.  (Filing No. 39-22, Ex. 18, April 1, 2008 IRS letter to Baisden).  In response, Baisden disclosed email addresses for the clients identified in his discovery responses, (filing nos. 39-21, Ex. 17, April 9, 2008 Baisden/USDOJ email exchange; 39-24, Ex. 20, April 10, 2008 email listing), and supplemental discovery responses.  (Filing No. 39-23, Ex. 19, Baisden's supplemental response).  Baisden did not assert his Fifth Amendment rights in his supplemental discovery responses.

A pretrial statement for the California civil case, signed by counsel for the government and Baisden, was filed on May 20, 2008.  United States v. Baisden, 1:06-cv-01368 (E.D. Cal), filing no. 172.  However, the parties "moved to stay this civil case pending the outcome of a criminal case the government anticipates imminently filing." United States v. Baisden, 1:06-cv-01368 (E.D. Cal), filing no. 178.  In accordance with the parties' joint stipulation and request, the civil case was administratively closed on May 22, 2008.  (Id.; filing no. 39-25, Ex. 21, May 22, 2008 NEF).

The indictment herein against Baisden was filed in this forum on March 17, 2010. Filing No. 1.  A previous indictment had been filed against Baisden and two of his clients, Susan Baisden-Koning and Michael Koning.  Additional indictments were filed against

Baisden, Walter and Deb Weaver, and Michael and Deanna Trierweiler for alleged tax evasion arising from tax planning and compliance advice received from, and tax returns prepared by, defendant Baisden.

Baisden claims the actions of the IRS and the Department of Justice, which have spanned nearly a decade, have ruined Baisden's reputation as a competent accountant, decimated his accountancy practice with the vast majority of his clients leaving him, and financially ruined him due to the time and expense of defending his reputation.  He states he now lives with his mother and is penniless and unable to earn a living as an accountant because of the conduct of the IRS and the government's lawyers.  Filing No. 40, at p.6.

LEGAL ANALYSIS

Baisden claims the IRS violated his Fourth and Fifth Amendment rights by initiating a civil investigation, thereby obtaining documents and statements from Baisden under the auspices of a civil investigation, when its true motive was accumulating information to pursue criminal charges.  Baisden claims that despite his "efforts to comply with the IRS' request for documents . . . and statements, the relentless efforts by the IRS to investigate Baisden, either criminally or civilly, has had a catastrophic effect upon him."  Filing No. 40, p. 6.  Baisden argues the "outrageous Government conduct must be examined," and upon examination, the court should dismiss the indictments against Baisden or suppress the evidence derived from the outrageous conduct.  Filing No. 40, p. 7.  He asserts "an evidentiary hearing is required to determine the intricate facts leading up to why the IRS decided to audit all of Baisden's cases and, perhaps more importantly, why the IRS did not inform Baisden from the outset that he was under criminal investigation."  Filing No. 40, p. 10.

Proceedings involving alleged tax fraud often proceed simultaneously in both the civil and criminal arena because the IRS splits the responsibility for enforcing tax law between its criminal investigative division (CID), with "special agents" investigating alleged criminal violations of the tax code, and the civil examination division, with "revenue agents" conducting civil tax audits.   An examination division audit usually ends with a civil settlement between the IRS and the taxpayer, but it may expose a "firm indication of fraud on the part of the taxpayer."  If this occurs, under IRS regulations, the revenue agent must immediately suspend the audit and refer the case to the CID.   U.S. v. McKee, 192 F.3d 535, 537 -538 (6th Cir. 1999); United States v. Richardson, 2006 WL 2505930 at *2 (S.D. Ohio 2006).

Baisden claims his constitutional rights were violated during, and as part of, the government's pursuit of parallel civil and criminal investigations and proceedings.  Baisden seeks dismissal under the Fifth Amendment and suppression of evidence under the Fourth and Fifth Amendments.  Specifically, the defendant claims: 1) any evidence obtained during the civil audit of his accounting methods and practices and the civil litigation to enjoin such conduct must be suppressed; 2) the government's pursuit of a criminal investigation under the auspices of a civil audit and proceedings violated his Fifth Amendment due process rights; and 3) the government's delay in seeking an indictment violated his Fifth Amendment due process rights.   In support of his arguments, Baisden relies on United States v. Rand, 308 F.Supp. 1231 (N.D. Ohio 1970) and U.S. v. Detroit Vital Foods, Inc., 407 F.2d 570 (6th Cir. 1969).  Rand relied on Detroit Vital, and Detroit Vital was reversed by U.S. v. Kordel, 397 U.S. 1 (1970).

A.   <u>Suppression of Evidence under the Fourth and Fifth Amendments</u>.

The IRS' civil investigation of Baisden's accounting methods began in 2003, and questions were directed to Baisden himself in 2004. The civil audit ended in July 2005, when the matter was referred for criminal investigation by the CID. Civil litigation to enjoin Baisden's accounting practices was commenced in 2006. The first criminal case was filed against Baisden in 2009, with two additional indictments filed in 2010. Baisden claims the documents and statements provided during: 1) the civil audit process, and 2) the civil litigation, provide the basis for the government's criminal case and must be suppressed under the Fourth and Fifth Amendments.

1)   The Civil Audit.

Baisden argues the IRS used the civil audit process to collect evidence for its criminal case against him. "[T]he IRS may not develop a criminal investigation under the auspices of a civil audit." United States v. Grunewald, 987 F.2d 531, 534 (8th Cir.1993). However, the mere existence of parallel civil and criminal proceedings is not evidence of improper conduct by the government and cannot, in and of itself, justify suppression of evidence obtained during an audit. U.S. v. Wadena, 152 F.3d 831, 851-52 (8th Cir. 1998). As stated in Wadena and Grunewald, even when the defendant has not been apprised of the nature of the IRS' investigation, evidence obtained in the course of the investigation is suppressed under the Fourth or Fifth Amendments only if the defendant establishes: 1) the evidence was obtained after the IRS had "firm indications of fraud" by the defendant, 2) there is clear and convincing evidence that the IRS affirmatively and intentionally misled the defendant, and 3) the IRS's conduct resulted in prejudice to defendant's constitutional rights. Grunewald, 987 F.2d at 534. See also, Wadena, 152 F.3d at, 851-852.

In Grunewald, the defendant claimed the IRS unlawfully developed a criminal investigation under the auspices of a civil audit, and all information obtained thereby must be suppressed.  Although the evidence obtained during the civil audit ultimately lead to criminal prosecution, Grunewald held the evidence would not be suppressed where the defendant failed to prove  the revenue agent had "firm indications of fraud" prior to his initial meeting with Grunewald and his receipt and analysis of documents reflecting unreported income; and the revenue agent did not affirmatively mislead Grunewald as to the true nature of his audit, or fail to refer the investigation to CID once he discovered "firm indications of fraud." Grunewald, 987 F.2d at 534.   The "mere failure of an IRS agent to inform a defendant that information developed in an audit may result in a further criminal investigation does not indicate affirmative and intentional deceit by the IRS." Grunewald, 987 F.2d at 534.

Applying the Grunewald factors, Wadena also denied defendants' motions to suppress the evidence obtained from a civil audit which was later used to prosecute IRS criminal charges.  In Wadena, the defendants claimed that in late 1993, the IRS conducted a civil audit "with the express and undisclosed purpose of gathering information for a criminal investigation." Wadena, 152 F.3d at 850.   The defendants presented evidence showing the government's chief CID investigator who conducted the criminal investigation knew IRS revenue agents were preparing to conduct a civil audit regarding the same matters; the CID investigator asked the revenue agent for a copy of Wadena's past tax return; and the civil audit was not referred to the CID until 1994.  Based on this evidence, the defendants argued the CID investigator's knowledge, and alleged direction, of the simultaneous criminal investigation and civil audit, and his alleged failure to timely refer the case to the CID, violated the defendant's Fourth and Fifth Amendment rights.  The Eighth Circuit disagreed.

Applying the Grunewald factors, Wadena explained that the act of conducting an IRS audit is not evidence of a "firm indication of fraud." "A 'firm indication of fraud' is different than an initial indication that fraud exists, and it is more than a mere suspicion of fraud." Wadena, 152 F.3d at 851. Wadena re-affirmed the defendant has the burden of proving the Grunewald factors, and in the absence of any evidence showing the revenue agent had a firm indication of fraud yet failed to suspend the civil audit and refer it to the CID, the defendants had failed to prove the first Grunewald requirement. As to the second Grunewald requirement, Wadena concluded the defendants failed to present "clear and convincing evidence that the IRS affirmatively and intentionally misled the defendants by conducting the civil audit . . . with the express purpose of obtaining records for the criminal investigation." Wadena, 152 F.3d at 852. Evidence that the IRS auditor knew of the IRS criminal investigation is not sufficient to prove the second Grunewald requirement.

Although Baisden claims the IRS civil audit commenced in 2004 was conducted to disclose evidence of criminal conduct, he has no evidentiary support for this statement, and has presented no evidence the IRS had "firm indications of fraud" when the civil audit was commenced and at any time prior to July 2005, when it was referred to the CID. IRS civil audits are performed routinely to determine if tax errors or omissions have occurred. A failure to report income correctly "may be due to mistake, inadvertence, reliance on professional advice, honest difference of opinion, negligence or carelessness, none of which constitutes deliberate intent to defraud." Groder v. U.S., 816 F.2d 139, 143 (4th Cir. 1987). Civil audits may serve to uncover evidence of intentional tax evasion, but absent some evidence to the contrary, the court cannot assume they were initiated as a covert means to obtain evidence for criminal prosecution. U.S. v. Peters, 153 F.3d 445, 454 (7th Cir. 1998). Baisden has failed to prove the first Grunewald requirement. See, Wadena, 152 F.3d at 851.

11

Baisden has also failed to prove the IRS "affirmatively and intentionally misled" him during the course of the civil audit – the second Grunewald requirement. Although Baisden claims the IRS engaged in outrageous conduct by failing to inform him from the outset that he was under criminal investigation, there is no showing Baisden was being criminally investigated prior to July 2005. "[R]evenue agents need not expressly advise taxpayers that a routine civil audit may lead to criminal proceedings if discrepancies are uncovered, as all taxpayers, especially businessmen, are presumed to be aware of this possibility." U.S. v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982). See also, U.S. v. Powell, 835 F.2d 1095, 1099 (5th Cir. 1988)(("[R]evenue agents have no duty to inform taxpayers that the agents' investigations might result in criminal charges."). Absent some showing of an affirmative misrepresentation by the IRS, evidence obtained during an IRS civil audit should not be suppressed even when government agents did not disclose the possibility or existence of a criminal investigation. Grunewald, 987 F.2d at 534. See also, U.S. v. Robson, 477 F.2d 13, 17-18 (8th Cir. 1973)(holding an IRS special agent or revenue agent is not required to warn a taxpayer that an audit may have potential criminal ramifications, and the failure to provide such information does not render the IRS' investigation unreasonable or coercive, and does not justify suppression of the evidence obtained during the investigation.)

Finally, Baisden has failed to show the IRS' conduct prejudiced his constitutional rights–the third requirement of Grunewald. Baisden argues he was "originally under the impression that the civil audit of Michael Koning and Bioventures, Inc. was a non-criminal matter and, resultantly, he provided statements and documents in good faith to the IRS," (filing No. 40, p. 15). Baisden was contacted to schedule an appointment with the IRS revenue agent, and received a confirming letter thereafter with a listing of documents to bring to the meeting. The meeting was held at the IRS agent's office. (Filing Nos. 39-5, Ex. 3, August 2, 2004 IRS letter to Baisden); 39-6, Ex. 3A, IRS Information Document Request). Baisden attended the scheduled meeting, brought the requested documents,

provided statements at the meeting, and submitted additional documents thereafter at the government's request.

There is no showing Baisden was detained, mandated or forced to attend any meetings with the IRS or to produce documents. Although "a consent search is unreasonable under the Fourth Amendment if the consent was induced by deceit, trickery or misrepresentation of the Internal Revenue agent," (U.S. v. Powell, 835 F.2d 1095, 1098 (5th Cir. 1988)), the defendant has made no showing of IRS misconduct. Baisden consented to cooperate with the IRS by producing the documents requested by that agency. His Fourth Amendment rights were not violated. See, United States v. Irvine, 699 F.2d 43, 46 (1st Cir.1983)(records obtained during an IRS interview were not suppressed under the Fourth Amendment where the agent made no affirmative misrepresentations); United States v. Sclafani, 265 F.2d 408, 414-415 (2d Cir.1959)(holding that to obtain valid consent under the Fourth Amendment to review records for a civil audit, the taxpayer need not be told the government may commence criminal rather than civil proceedings with the records disclosed); U.S. v. Kaatz, 705 F.2d 1237, 1243 (10th Cir. 1983)(holding suppression of evidence obtained during a civil audit was not warranted where nothing in the record showed the defendants were misled by anything the IRS agent did or said. "Failure to warn that a criminal investigation may ensue is not fraud, deceit, or trickery.").

To the extent Baisden is claiming production of documents violated his Fifth Amendment rights, this argument should also be rejected. Even when a taxpayer has a reasonable apprehension of criminal prosecution, the Fifth Amendment generally does not protect the content of requested documents. United States v. Norwood, 420 F.3d 888, 895 (8th Cir. 2005); see also, United States v. Doe, 465 U.S. 605, 612-13 (1984). Rather, only the act of producing the documents is sufficiently testimonial in nature to potentially garner the protection of the Fifth Amendment. Id. In other words, the Fifth Amendment only

offers protection if the mere admission, through physically producing the documents, that certain "papers exist, [are] in his possession or control, and [are] authentic" is sufficiently testimonial in nature to be incriminatory.   United States v. Hubbell, 530 U.S. 27, 35-36 (2000); see also, United States v. Teeple, 286 F.3d 1047, 1049 (8th Cir. 2002).

　　　Although Baisden claims the statements he gave during the IRS' civil investigation must be suppressed as violating his Fifth Amendment right against self-incrimination, and may also be claiming his mere act of producing documents during interviews or otherwise was testimonial in nature, there is no evidence he was in custody or detained in any manner during any interviews conducted during the IRS' investigative processes.   There is no showing Baisden was coerced or threatened, or that his will was overborne such that his statements or production of documents were involuntary acts.   Statements made by the taxpayer to the IRS  during IRS investigations are admissible even when the taxpayer is not advised of his Miranda rights.   Beckwith v. U. S., 425 U.S. 341, 347 (1976); U.S. v. Larson, 612 F.2d 1301, 1304 (8th Cir. 1980); U.S. v. Vannelli, 595 F.2d 402, 406 (8th Cir. 1979). See also, United States v. Lehman, 468 F.2d 93, 105 (7th Cir.1972)(holding taxpayer's incriminating statements to IRS agents were not obtained by fraud or deceit, even though the agent did not tell the defendant of the criminal character of the investigation being conducted); United States v. Stamp, 458 F.2d 759, 777 (D.C.Cir.1971)(Miranda warnings are not required at the outset of every civil tax audit as a condition precedent to the introduction of information elicited from a taxpayer.").  Baisden's Fifth Amendment rights were not violated during the IRS civil audit.

　　　Baisden does not argue he was affirmatively mislead or misinformed by the IRS at any time, and has presented no evidence the IRS began or continued the civil audit process after it had a firm indication of fraud.  Based on the law and facts of record, Baisden was not subjected to a nonconsensual search of his tax documents.   There is no evidence of

government coercion, and no evidence Baisden was detained or in custody when he responded to the audit inquiries. To the extent he claims the IRS was required to advise him, from the outset, that criminal proceedings can arise from information obtained during a civil audit, his argument lacks merit. Baisden's motion to suppress the evidence obtained during the IRS' civil audit should be denied.

2)      Civil Litigation.

The Department of Justice filed a civil suit to enjoin Baisden's accounting practices in 2006. Baisden claims the government used the discovery processes of its civil litigation to obtain information for use in the criminal prosecution. He argues the civil discovery must be suppressed. Neither the facts nor the law, as set forth in U.S. v. Kordel, 397 U.S. 1 (1970), support Baisden's claim.

In Kordel, the FDA began investigating a company for alleged violations of the Federal Food, Drug, and Cosmetic Act, and shortly thereafter, the Department of Justice filed a civil suit for seizure of certain products. Voluminous written discovery was served in the civil case, and before the defendants had responded, they were advised a parallel criminal action would likely be filed. Citing their Fifth Amendment privilege against compulsory self-incrimination, the defendants moved to stay the civil case or at least any obligation to respond to the civil discovery until the criminal case was over. The motion to stay was denied. The defendants responded to the civil discovery and shortly thereafter, the Department of Health formally recommended criminal prosecution by the Justice Department. Indictments were filed and the defendants were convicted. On appeal, the defendants argued that using the civil discovery process to compel answers to discovery which, in turn, is used to build the government's parallel criminal case "reflected such

15

unfairness and want of consideration for justice" as to require reversal.   Kordel, 397 U.S. at 11.

Kordel disagreed, holding that defendants faced with civil discovery are not compelled to provide answers.  Rather, they can invoke and preserve their Fifth Amendment privilege against compulsory self-incrimination, or provide answers subject to a protective order. However, a party who chooses to provide evidence in a civil case in spite of the risk that a prosecutor might later seek to use that evidence against him in a criminal prosecution involving the same subject matter has waived his Fifth Amendment rights as to the information provided.   Kordel, 397 U.S. at 10 (holding defendant's failure to assert the Fifth Amendment privilege in response to civil discovery "leaves him in no position to complain now that he was compelled to give testimony against himself.").

Based on the facts of record,  Baisden was advised he was the subject of a criminal investigation in July of 2005, and was promptly advised of his Miranda rights.  The federal civil suit against Baisden was filed on September 29, 2006.  Therefore, Baisden was aware he may be facing criminal prosecution and had been advised of his Fifth Amendment rights before he provided civil discovery responses.  During the course of the civil litigation, he did not invoke his Fifth Amendment right to remain silent in response to the IRS' discovery requests.  He did not seek a protective order regarding any of the discovery requests.  The evidence obtained during civil discovery was not provided in response to custodial interrogation or compelled by the court.  Rather, Baisden failed to assert and thereby waived his Fifth Amendment privilege against compulsory self-incrimination.  Baisden's motion to suppress information obtained through the mechanisms of civil discovery should be denied.

B.    Dismissal under the Fifth Amendment Due Process Clause.

Baisden argues dismissal is warranted under the Fifth Amendment Due Process Clause due to: 1) the government's outrageous conduct in pursuing parallel litigation and charges against Baisden, and 2) its pre-indictment delay in filing criminal charges. These arguments will be discussed in turn.

1)    Dismissal for Outrageous Government Conduct.

Baisden claims dismissal is warranted because the government's persistent, ongoing, and long-term pursuit of civil and criminal litigation against him violated his due process rights. Baisden explains:

> It is hard to describe in words how the constant scrutiny and investigation by the IRS has ruined Lowell Baisden's life. Despite Baisden's efforts to comply with the IRS' request for documents and statements, the relentless efforts by the IRS to investigate Baisden, either criminally or civilly, has had a catastrophic effect upon him. Baisden has lost his reputation as an accountant; he has lost all of his clients; he has lost practically all of his personal assets; he has lost his wife's support; he now lives practically penniless with his mother. In total, Baisden's life over the past 10 years has been devastated by the Government's power exercised against him. It is in this context that the case law discussing parallel proceedings, constitutional violations, and the remedies for outrageous Government conduct must be examined.

Filing No. 40, pp. 6-7.

"Outrageous government conduct that shocks the conscience can require dismissal of a criminal charge, but only if it falls within the narrow band of the most intolerable government conduct." U.S. v. Morse, 613 F.3d 787, 792-93 (8th Cir. 2010). Although there

may be circumstances in which the conduct of agents is so outrageous that due process bars the government from invoking the judicial process to obtain a conviction, the "level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." U.S. v. King, 351 F.3d 859, 867 (8th Cir. 2003)(quoting United States v. Pardue, 983 F.2d 843, 847 (8th Cir.1993)).   To dismiss an indictment under the trial court's supervisory powers to preserve judicial integrity or to deter illegal government conduct, the court must find that the misconduct was flagrant. U.S. v. Struckman, 611 F.3d 560 (9th Cir. 2010).

Baisden argues the government's pursuit of parallel civil and criminal investigations and litigation was so outrageous that dismissal is warranted. Conducting parallel civil and criminal investigations does not violate the due process clause so long as the government does not act in bad faith. Kordel, 397 U.S. at 11; U.S. v. Copple, 827 F.2d 1182, 1189 (8th Cir. 1987).   "[A] criminal proceeding to punish violations, and suits in equity to restrain such violations, . . . may be brought simultaneously or successively.  The order of their bringing must depend upon the government; the dependence of their trials cannot be fixed by a hard-and-fast rule, or made imperatively to turn upon the character of the suit." Standard Sanitary Mfg. Co. v. U.S., 226 U.S. 20, 52 (1912).  "It would stultify enforcement of federal law to require a governmental agency . . . invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." Kordel, 397 U.S. at 11.

The government may act in bad faith if it brings a civil action solely for the purpose of obtaining evidence in a criminal prosecution or has failed to timely advise the defendant in its civil proceeding that it contemplates criminal prosecution.  However, aside from Baisden's bald assertion, there is no evidence the government initiated a civil investigation and lawsuit against Baisden solely to collect evidence for a criminal case.  As previously

18

explained, there is no evidence Baisden was affirmatively mislead, tricked or coerced to obtain his cooperation with the IRS. Baisden has presented nothing to show he was subjected to anything other than a standard civil tax audit, which the IRS routinely performs without any intent at the outset to bring criminal charges against a taxpayer. See, e.g., Kordel, 397 U.S. at 6 (holding the FDA's routine investigation was not done solely to obtain evidence supporting criminal charges). There is no evidence showing the government failed to promptly advise Baisden of its intent to pursue criminal charges once it possessed firm indications of fraud. In the absence of any supporting evidence, Baisden's claim that dismissal is warranted due to the IRS' bad faith or outrageous conduct should denied.

2)      Dismissal for Pre-Indictment Delay.

Baisden asserts his Fifth Amendment due process rights were violated by the government's delay in seeking and filing an indictment. Filing No. 38, p. 6, ¶ 17. A defendant claiming pre-indictment delay must prove: 1) the government's alleged delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. U.S. v. Jackson, 446 F.3d 847, 849 (8th Cir. 2006).

To prove actual and substantial prejudice, "the defendant must identify specific witnesses or documents lost during the delay and the information they would have provided," and "must show that the missing testimony or information is not available through other sources." Jackson, 446 F.3d at 850-51. The defendant cannot prove a due process violation if his alleged prejudice is insubstantial, speculative, or premature. Jackson, 446 F.3d at 851. "[B]are assertions of unreasonable and unnecessary delay are also insufficient to establish actual prejudice." U.S. v. Taylor, 603 F.2d 732, 735 (8th Cir. 1979). Moreover, delay attributable to the government's need to fully investigate the case, unlike delay to gain

19

tactical advantage over the defendant, has consistently been held reasonable and in accordance with due process.   Taylor, 603 F.2d at 735.

Baisden claims the government initiated a civil audit of his conduct in early 2003 and advised him he was subject to a criminal investigation in July 2005, but then pursued civil litigation against Baisden before finally pursuing a criminal indictment in 2009.  Baisden claims the IRS' case investigation targeted Baisden's accounting clients and, as a result, none of his past clients, including co-defendant Michael Koning, are willing to testify on Baisden's behalf at his upcoming trials.  Filing No. 40, p. 13.  In summary, Baisden claims:

> Baisden has suffered prejudice by now having lost the ability to call favorable witnesses on his behalf, and because Baisden has suffered inestimable angst and life pressures as result of the Government's assertion of power against him, the prejudice resulting from this 10 year inquisition against him has created the type of scenario which must be remedied through the dismissal of the Indictments against him.

Filing No. 40, p. 13.

The defendant has failed to show witnesses are missing or evidence has been lost due to the government's delay in seeking an indictment.  The fact that witnesses are unwilling to testify, and would need to be subpoenaed to attend Baisden's trial, and the possibility that their opinions of Baisden have changed or their memories have dimmed over time, does not demonstrate prejudice justifying a dismissal of the indictment.  Taylor, 603 F.2d at 735. In addition, the defendant has failed to make any showing the government's pre-indictment delay was motivated by an interest is harassing Baisden or gaining a tactical advantage. Baisden's accounting methods and practices on behalf of his clients were complex, resulting in a long-term government investigation to gather information before seeking an indictment. "[P]rosecutors are under no duty to file charges as soon as probable cause exists but before

they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." U. S. v. Lovasco, 431 U.S. 783 (1977).

C.     Fourth and Fifth Amendment Claims--Right to an Evidentiary Hearing.

Baisden claims he is entitled to an evidentiary hearing "to determine the intricate facts leading up to why the IRS decided to audit all of Baisden's cases and, perhaps more importantly, why the IRS did not inform Baisden from the outset that he was under criminal investigation." Filing No. 40, p. 10.   Evidentiary hearings need not be set as a matter of course.   A defendant must make a "sufficiently definite, specific, detailed and nonconjectural" to be entitled to an evidentiary hearing on a pretrial motion. United States v. Mimms, 812 F.2d 1068, 1073-74 (8th Cir. 1987).   This showing is particularly important where the defendant has the burden of proof on the motion.

Baisden is, in essence, claiming agency and prosecutorial misconduct in deciding how and to what degree criminal charges should be pursued.   Such claims are akin to claiming selective enforcement or selective prosecution and in such cases, discovery and an evidentiary hearing are denied absent defendant's threshold showing of improper conduct. U.S. v. Perry, 152 F.3d 900, 903 (8th Cir. 1998) (evidentiary hearing properly denied when defendant made inadequate showing of discriminatory effect and no showing of improper purpose).   A defendant must show a colorable basis for his or her claim before discovery and an evidentiary hearing will be allowed on claims the IRS used the civil audit and discovery processes to collect evidence for a criminal case.   U.S. v. Utecht, 238 F.3d 882, 887-88 (7th Cir. 2001).   "This standard prevents defendants from unnecessarily imposing enormous administrative costs and delays in tax evasion prosecutions by engaging in extended fishing expeditions to support frivolous challenges." Utecht, 238 F.3d at 888.   See also, U.S. v. Marra 481 F.2d 1196, 1203 (6th Cir. 1973)(denying an evidentiary hearing on

whether statements to a CID agent must be suppressed for allegedly misleading the defendant into believing that a civil audit only was being conducted where the defendant's presentations by affidavit and exhibits lacked the necessary "solidity" to require an evidentiary hearing).

Similarly, the defendant has failed to make any threshold showing of actual prejudice and improper government motive for the purposes of asserting a right to dismissal for pre-indictment delay.  He is not entitled to an evidentiary hearing on this claim.  Taylor, 603 F.2d at 735.  Therefore, he is also not entitled to the evidence he seeks on his motion to compel (filing no. 53) and that motion should be denied as moot.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that defendant Lowell Baisden's motion to dismiss or, alternatively, to suppress evidence, (filing no. 38), and for an order compelling the government to disclose information Baisden needs to pursue his motion to dismiss, (filing no. 53),  be denied.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

DATED this 17th day of December, 2010.

BY THE COURT:

*s/ Cheryl R. Zwart*_____
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.